[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11090
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cv-00705-SCB-JSS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SOUTH CAPITAL CONSTRUCTION, INC.,

Defendant,

REGINA M. PLANES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 13, 2018)

Before TJOFLAT, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

This appeal arises from a suit by the United States to recover $662,226 in funds transferred from South Capital Construction, Inc. to its president and sole shareholder, Regina Planes.  After a bench trial, the district court found that South Capital's transfers to Planes were both constructively and actually fraudulent under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101.  On appeal, Planes asserts that the district court applied incorrect legal standards to erroneously conclude that the transfers were fraudulent.  After careful review, we find no reversible error in the district court's decision.  We affirm.

## I

Regina Planes is the sole owner of South Capital Construction, Inc. and 10 other companies; an officer, manager, or director of 18 other entities; and holds sole title to her family's home, rental properties, and luxury automobiles.  Her husband, William Planes, is the "top decisionmaker" in each of the Planes family companies yet holds nothing in his own name because, as he testified, "somebody will always be coming after [him]."  And, indeed, at the time of trial, William Planes owed the IRS penalties of more than $1 million and the Planes family companies collectively owed more than $14 million.

2

Although she was South Capital's sole shareholder, Regina's actual involvement with the company remains, to this day, somewhat unclear. She has held varying titles since 2001, when South Capital was first incorporated, including director, CEO, and president.[1] Despite this, Regina has had little to no involvement with the company's operations. In previous declarations to the IRS she stated that she could not remember anything that she did for South Capital between 2006 and 2008, and at her deposition she stated that she was not sure whether South Capital had ever paid her. At trial, however, Regina testified that South Capital paid her for her work with two other Planes family businesses—specifically, for office-administrator duties at St. Nicholas Greek Orthodox Parochial School and decorating services at CVC Veterinary Centers.

Between 2006 and 2008, South Capital paid Regina weekly—$380,000 total in 2006, $207,430 in 2007, and $74,796 in 2008—for a grand total of $662,226. At the same time, the company was operating at a loss and accumulating massive tax liabilities. South Capital's financial woes actually began a few years earlier, shortly after it became the general contractor for a redevelopment project. By the final quarter of 2005, South Capital had stopped paying its employment taxes. And in 2007, South Capital's situation worsened when it stopped receiving loan disbursements for the redevelopment project.

---

[1] The company was first incorporated as ICC Air Charter Services in 2001; the name changed to South Capital Construction, Inc. in 2005.

3

After several years of investigating the Planes family companies, the United States filed a complaint to obtain a judgment against South Capital for unpaid federal taxes for the years 2005 through 2009, and against Regina to recover the $662,226 in allegedly fraudulent transfers that South Capital made to her during that time. When South Capital's counsel withdrew and none was substituted, the district court entered a default judgment against the company in the amount of $2,820,996. The suit then proceeded against Regina. After a two-day bench trial the district court held that South Capital's payments to Regina were both constructively and actually fraudulent under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.105(1). Regina timely appealed.

## II

On appeal, Regina challenges the district court's holdings as to both constructive and actual fraud. We consider each in turn, reviewing the district court's factual findings for clear error and its legal conclusions *de novo*. *Kardash v. Comm'r of IRS*, 866 F.3d 1249, 1252 (11th Cir. 2017).

## A

To establish constructive fraud under Florida law, a plaintiff must show that a transfer was made absent "reasonably equivalent value in exchange" and that the debtor "[i]ntended to incur, or believed or reasonably should have believed that he

4

or she would incur, debts beyond his or her ability to pay as they came due."  Fla. Stat. § 726.105(1).

These requirements are both met here.  First, as the district court found, Regina did not provide South Capital with "reasonably equivalent value" for the transfers because she provided it with no meaningful services at all.  Regina contends on appeal that the district court applied the wrong legal test.  Citing one case from the Third Circuit and one from the Middle District of Florida, she insists that the district court here erred because it did not expressly make findings concerning two distinct and separate issues: first, whether South Capital received any value at all in exchange for the payments, and second, whether the value it received was "reasonably equivalent" to the services she provided.  In particular, Regina asserts that because the court found a lack of reasonably equivalent value without first addressing whether South Capital received any value, as she says is required by *In re R.M.L., Inc.*, 92 F.3d 139, 150 (3d Cir. 1996), reversal is required.  This is especially so, Regina says, because the district court here should have found not only "*some* value" but also "*reasonably equivalent* value" based on all of the "services" she provided South Capital.

Contrary to Regina's assertion, the district court did not commit reversible error by failing to explicitly state whether South Capital received any value at all. While the Third Circuit may address the "reasonably equivalent value" question

5

using a two-step test, that is not a requirement in this Circuit. *See*, *e.g.*, *Kardash*, 866 F.3d at 1255–56 (focusing solely on whether a company received reasonably equivalent value for allegedly fraudulent transfers). Further, and more to the point, a finding concerning "any value" would not change the outcome in this case one whit: the statutory test is whether the debtor received "*reasonably equivalent* value in exchange for the transfer," and here, the district court reasonably found, it did not. Regina's testimony concerning what she did for South Capital ranged from "nothing at all" to "I don't know" to "being involved in meetings" to "administrative services for two other companies." She provided no credible testimony, however, as to why South Capital paid her to work with these other companies, and her brief on appeal only vaguely references "services" providing "some measure of benefit" to South Capital.[2] Thus, the district court did not err by finding that she failed to provide services "reasonably equivalent" to $662,226.

Next, the district court properly found that, at the time South Capital transferred the funds, it "[i]ntended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due." Fla. Stat. § 726.105(1)(b). South Capital reported losses of more than $1.6

---

[2] To the extent that Regina disagrees with the language the district court used to describe its finding—"no meaningful services"—we can only assume that the district court used this phrase in response to her repeated and vague assertions throughout the proceedings that she provided South Capital with "some services." Regardless, we do not find that the district court's use of this phrase indicates any misunderstanding or misapplication of the law as it also clearly and unambiguously made a finding that Regina did not provide South Capital with "reasonably equivalent value" for its transfers.

6

million on each of its 2006-2007 tax returns and largely failed to pay any employment taxes at all between 2006 and 2009, all the while transferring funds to Regina. The district court certainly did not err by finding that, on these facts, South Capital reasonably should have believed that it would incur debts beyond its ability to pay as they came due.

Regina again alleges that the district court applied the wrong legal standard to make this finding—specifically, that the district court improperly discussed insolvency. In particular, Regina asserts that while the Florida Uniform Fraudulent Transfer Act is concerned solely with whether South Capital "[i]ntended to incur, or believed or reasonably should have believed [it] would incur" debts beyond its ability to pay, the district court found that "the inability to pay debts as they became due creates a presumption of insolvency under FUFTA." Because insolvency is not the standard, Regina contends, reversal is warranted.

But the district court's express findings belie Regina's argument. Although the court observed that South Capital was insolvent, it did not rely on this fact to find constructive fraud.[3] Quite the contrary, the court stated that "insolvency… is *not* an element of constructive fraud" and that "the financial component of [that] test relates solely to the transferor's ability to pay its debts as they [become] due."

---

[3] The finding of insolvency is relevant to the district court's alternative finding that South Capital committed actual fraud. *See* Fla. Stat. §§ 726.103(2), 105(2)(i) (providing that a debtor that is "generally not paying [its] debts as they become due is presumed to be insolvent" and that insolvency is one factor indicating actual fraud).

The district court then went on to find explicitly that "South Capital lacked the ability to pay its debts as they became due."  Regardless of other findings it might have made, there is no doubt that the district court properly found that South Capital would continue to incur liabilities beyond its ability to pay as they became due.

Regina also criticizes the district court's use of the phrase "reasonably foreseeable" rather than "reasonably should have believed."  Regina is correct that the dictionary definitions of "foreseeability" and "belief" are not strictly the same.  But we cannot say that the district court's phrasing rises to the level of reversible error.  For one thing, "a district court, writing after a bench trial, is not required to use 'magic words' or write with such precision that no trained legal mind could find an ambiguity."  *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1395 (11th Cir. 1997).  Instead, we will find error only "if no reasonable construction of what the district court wrote can support a lawful judgment."  *Id.*  That is not the case here.  The district court both quoted the statutory language elsewhere in the opinion, and made findings of fact supporting its conclusion that South Capital continued to pay Regina while unable to pay its debts.  Moreover, the evidence—yearly business losses, failure to pay employment taxes, a negative operating balance—indicates that South Capital (at the very least) "reasonably should have believed" that it would not be able to pay its debts as they came due.

8

Because a "reasonable construction of what the district court wrote" clearly

supports the judgment, we will not disturb the district court's holding.[4]

## B

Regina separately challenges the district court's finding that the transfers

meet the statutory requirements for actual (as opposed to constructive) fraud.  The

Florida Uniform Fraudulent Transfer Act provides that a transfer is actually

fraudulent if a debtor made the transfer "[w]ith actual intent to hinder, delay, or

defraud any creditor of the debtor."  Fla. Stat. § 726.105(1)(a).  The Act lists

eleven badges of fraud that may assist a court in determining actual intent—

including, among other things, whether the transfer was made to an insider,

whether the transfer was concealed, whether the debtor absconded, whether the

debtor was insolvent or became so shortly after the transfer, or whether the value

of any consideration received by the debtor was reasonably equivalent to the

transfer.  *See* Fla. Stat. § 726.105(2).  Our case law makes clear, however, that

"consideration may be given to factors other than those listed," *Wiand v. Lee*, 753

F.3d 1194, 1200 (11th Cir. 2014) (citation omitted), and that a factfinder may

"infer fraudulent conduct from the circumstantial evidence and the surrounding

---

[4] Regina also conclusorily asserts that South Capital could not have had a reasonable belief that it would not be able to pay its debts as they came due because it could not have foreseen the lapse in loan funding for the redevelopment project.  The record indicates, however, that South Capital's failure to pay its employment taxes and business losses began in 2005 and 2006, respectively—well before the early-2007 funding lapses.

circumstances of the transactions." *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998).

Here, the district court properly relied on three of the statutorily enumerated badges of fraud—along with other circumstantial evidence—to find actual fraud. Both parties concede that, as the CEO's wife and a South Capital shareholder, Regina was an insider. Fla. Stat. § 726.105(2)(a). And as the district court found in its constructive-fraud analysis, South Capital was insolvent and did not receive reasonably equivalent value for its transfer to Regina—two additional badges of fraud. Fla. Stat. § 726.105(2)(a)(i), (h). Further, the district court found that the Planes family had purposefully structured its business affairs such that William would bear all of the liabilities while all of the assets remained safe in Regina's name, with "the goal of defeating the collection of taxes." With this in mind, the district court found that South Capital's transfers to Regina were in furtherance of a fraudulent scheme, with the purpose of "interfer[ing] with the administration of the internal revenue laws."

Regina contends that the district court's finding of actual fraud improperly relies on its findings concerning constructive fraud. It is true that the district court discussed insolvency and lack of reasonably equivalent value—two badges of actual fraud—in its discussion of both constructive and actual fraud. But the fact that reasonably equivalent value and insolvency are relevant to both inquiries does

10

not somehow render the district court's consideration of these "badges of fraud" inappropriate.  To the contrary, the district court's proper consideration of three statutorily listed badges of fraud—especially in light of the Planeses' testimony concerning how their businesses were structured—supports its finding that South Capital's transfers to Regina were made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  Fla. Stat. § 726.105(1)(a).  Thus, the district court did not clearly err in finding actual fraud.

### III

The district court did not err in holding that South Capital's transfers to Regina were made absent "reasonably equivalent value in exchange" and that South Capital "[i]ntended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due."  Nor did the district court err in holding that, in light of the circumstances, the transfers were made "[w]ith actual intent to hinder, delay, or defraud" South Capital's creditors.  Accordingly, we affirm.

**AFFIRMED.**

11